**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John L. VIDAKOVICH,
Defendant–Appellant.**

**No. 89–8096.**

United States Court of Appeals,
Tenth Circuit.

Aug. 24, 1990.

David B. Hooper of Hooper Law Associates, P.C., Riverton, Wyo., for defendant-appellant.

Francis Leland Pico, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with him on the brief), D. Wyo., Cheyenne, Wyo., for plaintiff-appellee.

Before McKAY, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Pursuant to a plea bargain with the government, John L. Vidakovich pled guilty on May 18, 1989, to a three-count information filed in the United States District Court for the District of Wyoming charging him with bank fraud. Specifically, count one charged Vidakovich, the owner of the Yellowstone State Bank, with the misapplication of monies belonging to the Yellowstone State Bank, which was insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 656. In count two, he was charged with the making of false entries in the books and records of the Yellowstone State Bank for the purpose of injuring and defrauding the bank, the Federal Deposit Insurance Corporation, and examiners of the Federal Reserve Bank of Kansas City, Missouri, in violation of 18 U.S.C. § 1005. In count three Vidakovich was charged with the obstruction of justice by knowingly, and with an improper motive, failing to produce documents in his possession for inspection and use by a Grand Jury, in violation of 18 U.S.C. § 1503.

Some five months after pleading guilty to the charges described above, Vidakovich filed a motion on October 24, 1989, to withdraw his plea of guilty to each of the three counts of the information. As reason therefor, Vidakovich asserted: (1) that his guilty pleas were involuntary and coerced; (2) that he had a valid defense to each of the charges; and (3) that the government had breached the plea bargain when it asked the district court to enter a restitution order as a part of its sentence.

Acting pursuant to a local rule of court, the case was reassigned to a United States District Court Judge for the District of New Mexico who, after hearing, denied the motion to withdraw the guilty pleas previously made by Vidakovich. The same judge then sentenced Vidakovich to four years imprisonment on each of the three counts, to be served concurrently. As part of his sentence, the district judge further ordered that Vidakovich make restitution to the United States Department of Justice in the amount of $1.25 million.[1] Finally, the district judge ordered a special assessment in the amount of $50 for each count, pursuant to 18 U.S.C. § 3013. Vidakovich appeals the district court's order denying his motion to withdraw his pleas of guilty. We affirm.

A few background facts will place the matter in focus. Vidakovich, a lawyer, was the owner of the Yellowstone State Bank in Lander, Wyoming. His wife, as well as two children, also had an interest in the bank. The bank had been closed by federal and state authorities on November 1, 1985, and thereafter had been the subject of a Grand Jury investigation for several years. On May 17, 1989, Vidakovich appeared under subpoena before the Grand Jury. Vidakovich, who had an attorney, testified most of that day before the Grand Jury. Negotiations between the government and Vidakovich and his attorney took place during the late afternoon and evening on May 17, 1989, and culminated in a plea bargain whereby Vidakovich appeared in district court the next morning, May 18, 1989, and pled guilty to the three-count information referred to above.

As indicated, after the Grand Jury adjourned on May 17, 1989, Vidakovich's counsel contacted government counsel to discuss the situation. Although there is some dispute as to the sequence of events, we will assume that the government indicated that it was preparing a multi-count indictment against Vidakovich and members of his family for bank fraud. Vidakovich's counsel indicated that a "deal" might be possible. After conferring with Vidakovich, his counsel indicated that he might be willing to plead guilty to one count. Government counsel indicated that Vidakovich would have to plead guilty to three counts.

At this juncture, it became apparent that any plea bargain must be conditioned on the government's promise not to pursue any additional claims against Vidakovich, any members of Vidakovich's family, or his

1. We are advised that Vidakovich filed a motion for reduction of sentence pursuant to Fed.R. Crim.P. 35 and that the district court thereafter vacated its restitution order.

former law partner. Counsel was advised that it would be unacceptable to the court, and to the government, if Vidakovich were to plead guilty simply to prevent his wife and children from being prosecuted. Vidakovich's attorney explained that Vidakovich would be pleading guilty only because he was in fact guilty, adding that any actions of his wife and children relating to their interest in the bank were at Vidakovich's direction. In any event, and disregarding who said what and when at these discussions, as an outgrowth of that meeting it was agreed that Vidakovich would plead guilty the next morning to a three-count information, and that the government would not seek a Grand Jury indictment against Vidakovich, his family, or his former law partner.

As indicated, on May 18, 1989, Vidakovich pled guilty to all counts in a three-count information and sentencing was delayed for a pre-sentencing investigation and report. The transcript of the hearing when Vidakovich pled guilty indicates that both counsel agreed that they, by their plea bargain, could not interfere with the discretion vested, by statute, in the district court in its imposition of sentence. The United States Attorney agreed that he would not request imposition of a fine, which would leave the matter to the district court. As concerns a restitution order, it is true, as counsel points out, that the district court inquired of the United States Attorney as to whether there are "going to be issues with regard to restitution...." The United States Attorney replied, "None that I'm aware of at this time...." The district court was then advised that the Federal Deposit Insurance Corporation had already filed civil suits against Vidakovich in state court "attempting to recoup through civil action." In response to this limited colloquy, the district court responded as follows:

It is my understanding with regard to the disposition in this case that the Court is not bound to any agreement and will independently make determination as to

what is an appropriate disposition and sentence in this matter.

To the foregoing statement by the court, Vidakovich personally replied, "I understand that."

■ At the outset, we reject the suggestion that by filing a motion to require restitution to the Federal Deposit Insurance Corporation the government breached the plea bargain with Vidakovich. This line of argument is without merit for several reasons. The record before us contains a so-called "sworn statement" of Vidakovich, made during the plea bargaining process, wherein the government, in return for Vidakovich's pleading guilty to a three-count information, "promised" Vidakovich four things: (1) The government would not file any additional charges against Vidakovich based on his operation of Yellowstone State Bank; (2) the government would not file any charges against any member of Vidakovich's family based on their activities at the bank; (3) the government would recommend to the district court that Vidakovich be placed on a "signature bond" pending sentencing; and (4) the government would not file any criminal charges against any other officer or director of the bank, or John Pappas, Vidakovich's former law partner. After itemizing these promises, Vidakovich indicated quite clearly that these were the only promises made him by the government.

At the hearing on the following day, May 18, 1989, when Vidakovich pled guilty to the three-count information, the district court was advised of the terms of the plea bargain. There was colloquy between the court and counsel regarding a "fine" and "restitution." It was at that time that the United States Attorney agreed that as a part of the plea bargain he would not request a fine which, of course, would have left the matter to the discretion of the judge.[2]

The colloquy between the court and counsel regarding restitution has been set

**2.** We agree, of course, with counsel that a criminal "fine" and a "restitution" order to make payment to the victim are not one and the same.

forth above. It is true that in response to an inquiry by the court, the United States Attorney stated that "at this time" there apparently would be no issue regarding restitution since the Federal Deposit Insurance Corporation had already brought civil action against Vidakovich to recover monies misapplied by Vidakovich. Any possible misunderstanding by Vidakovich of the response made by the United States Attorney was immediately clarified by the district judge when he stated, in direct response to the restitution colloquy between the court and government counsel, that in imposing a sentence he was "not bound by any agreement" and that he would make an independent "determination as to what is an appropriate disposition and sentence in this matter," to which statement Vidakovich replied, "I understand that."

Additionally, when the United States Attorney later filed a motion to require restitution, Vidakovich filed a "traverse," seeking to have the motion denied, not on the basis of the plea bargain itself, but on the basis of the court colloquy which occurred when Vidakovich pled guilty to the three-count information. Finally, even though the district court initially imposed a sentence which included a restitution order, we are advised that the order was later vacated on motion. So thereafter, Vidakovich was under no restitution order. For all those reasons, the restitution "problem" did not require the district court to grant Vidakovich's motion to withdraw his guilty pleas.

■ The central issue in this case is whether Vidakovich's pleas of guilty were knowingly and voluntarily made, or were the result of coercion. The judge who conducted the hearing on the motion to withdraw had before him numerous affidavits submitted by both parties, and Vidakovich testified at length. The district court then held that the pleas were entered knowingly and voluntarily. We are not inclined to disturb that holding.

As indicated, Vidakovich testified at length at the hearing on his motion to withdraw his pleas of guilty which by then had been entered some five months previously. The gist of his testimony was that he had "lied" when he pled guilty to the three-count information, that in fact he was not guilty of any of the offenses charged, had complete defenses to all charges, and that he only pled guilty to protect members of his family and his former law partner.

As stated, in addition to the testimony of Vidakovich, the district court had before it numerous affidavits from both parties, and a transcript of the proceedings when Vidakovich entered his pleas of guilty. After considering all of this evidentiary matter, the district court concluded, in effect, that Vidakovich had told the truth at the hearing when he pled guilty to the three-count information, and was lying when he testified at the hearing on his motion to withdraw his guilty pleas. The judge who denied the motion to withdraw noted that the transcript of the hearing when Vidakovich pled guilty indicated that the judge who accepted the pleas of guilty had acted most "carefully and cautiously," a fact which Vidakovich concedes. Also, the district court observed that Vidakovich was trying to "manipulate" the judicial process, and that with the lapse of time the government was "prejudiced," i.e., the Grand Jury, after Vidakovich's pleas of guilty, had "shut down" its investigation and with the ensuing lapse of time the statute of limitations had run on at least certain of the possible charges against Vidakovich. We are not inclined to disturb the district court's findings. Certainly the district court was not required to accept Vidakovich's self-serving testimony given at the hearing on his motion to withdraw his pleas of guilty.

In support of our disposition of this appeal, see *Mosier v. Murphy*, 790 F.2d 62 (10th Cir.1986), *cert. denied*, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986); *United States v. Cross*, 735 F.2d 1213 (10th Cir.1984); *United States v. Hancock*, 607 F.2d 337 (10th Cir.1979); and *Barker v. United States*, 579 F.2d 1219 (10th Cir. 1978).

Fed.R.Crim.P. 32(d) reads as follows:

If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may per-

mit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

In *Cross, supra,* we stated that the withdrawal of a guilty plea before sentencing is not a matter of right, but a matter of discretion, and that the test for review of an order denying a motion to withdraw a plea of guilty is whether such action, on the basis of the record, constitutes an abuse of discretion. "Unless it appears that the court acted unjustly or unfairly, there is no abuse of discretion," *citing Johnson v. United States,* 485 F.2d 240, 274 (10th Cir.1973).

In *Hancock, supra,* we also stated that a defendant does not have any absolute right to withdraw his plea of guilty even though the motion is made before sentencing. We did note in *Hancock, supra,* that where a motion to withdraw is made before sentencing, the motion should be "considered carefully and with liberality." We did reverse in *Hancock, supra,* but in that case the district court held *no* hearing on the motion to withdraw. In the instant case, the district court did hold a hearing where, *inter alia,* Vidakovich testified at great length.

In *Mosier, supra,* a defendant in state court pled guilty to murder pursuant to a plea bargain. Later he brought an action pursuant to 28 U.S.C. § 2254 claiming, *inter alia,* that he had only pled guilty because the prosecutor had agreed not to press charges against his wife and mother-in-law. The district court denied relief, and on appeal, we affirmed. In so doing, we spoke as follows:

> We cannot conclude that Mr. Mosier's Sixth Amendment rights were violated because much of the benefit of his plea bargain was bestowed upon third persons. We recognize that threats to prosecute or promises of leniency to third persons to induce guilty pleas can pose a danger of coercion. Aside from requiring special care to insure that the plea was in fact entered voluntarily and was not the product of coercion, we must respect the defendant's choice and "[i]f

> [an accused] elects to sacrifice himself for such motives, that is his choice ..." (citations omitted).

*Id.* at 66.

In *Barker, supra,* we upheld a district court's denial of a defendant's motion to withdraw his plea of guilty, agreeing with the district court that the defendant was by his motion to withdraw "attempting to manipulate the criminal justice system."

Finally, we note that although Vidakovich pled guilty to the three-count information on May 18, 1989, he did not file any motion to withdraw his plea of guilty until October 24, 1989. The government filed its motion to require restitution on September 1, 1989, and Vidakovich filed a traverse to that motion on September 19, 1989, complaining that the government's motion violated the plea bargain. The motion to withdraw the pleas of guilty was filed some seven weeks after the government's motion to require restitution.

The five-month delay between the entry of Vidakovich's pleas of guilty and his motion to withdraw suggests "manipulation." Counsel argued that Vidakovich was in fact "agonizing" over his decision to plead guilty for that entire period of time. Be that as it may, in *United States v. Barker,* 514 F.2d 208, 222 (D.C.Cir.1975), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975), when there was an eight-month lag between a plea of guilty and a motion to withdraw the plea of guilty, the Court of Appeals for the District of Columbia spoke as follows:

> Even where the plea was properly entered, however, the standard for judging the movant's reasons for delay remains low where the motion comes only a day or so after the plea was entered.... A swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considera-

**440**

bly more force. The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case. The most common form of prejudice is the difficulty the Government would encounter in reassembling far-flung witnesses in a complex case, but prejudice also occurs where a defendant's guilty plea removed him from an ongoing trial of co-defendants, who were then found guilty. That withdrawal would substantially inconvenience the court is also a proper factor for consideration (citations omitted).

*Id.* at 222.

Judgment affirmed.