943 F.2d 58
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronnie G. WIGGINS, also known as Clifton Mack Wiggins,
Defendant-Appellant.
 No. 90-2233.
 United States Court of Appeals, Tenth Circuit.
 Aug. 28, 1991.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 On November 10, 1989 the appellant, Ronnie Wiggins, along with Michael William Gardner and Larry Walton, escaped from the county jail in Grants, New Mexico. They took a correctional guard's vehicle and drove to Albuquerque, New Mexico where they robbed a Circle K Store. Three days later, the three allegedly robbed the United New Mexico Bank in Albuquerque.
 
 
 3
 On May 30, 1990, Wiggins pled guilty to the offense of bank robbery. Subsequently, the United States Probation Office prepared a revised presentence report dated July 18, 1990, which proposed certain departures increasing Wiggins's criminal history category from IV to VI, with a resulting sentencing guideline range of 70 to 87 months, compared to a range of 51 to 63 months without the recommended departure. On September 20, 1990, almost four months after he entered his guilty plea, and less than two weeks prior to, and in anticipation of, his sentencing hearing, Wiggins filed a motion to withdraw his plea. As grounds for withdrawal, Wiggins alleged that the only reason he pled guilty was because the plea agreement in his case and that of his co-defendant, Gardner, "was a 'package deal', and because [Wiggins] felt pressured to take the plea so that his co-defendant would receive a favorable disposition of his case...." R.Vol. I, Tab 65 at 2. Because of this alleged pressure to assist his co-defendant, Wiggins asserted "that he entered his guilty plea as a result of coercion." Id. He did not directly assert his innocence in his motion, but essentially did so at the sentencing hearing. The district court denied the motion and sentenced Wiggins to 87 months imprisonment. Wiggins appeals the denial of his motion to withdraw his guilty plea. Alternatively, he contends that the court erred in departing upward for sentencing purposes. We affirm.
 
 A.
 
 4
 Fed.R.Crim.P. 32(d) governs plea withdrawals. In the event a motion for withdrawal of a plea of guilty is made before sentence is imposed the rule provides that "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Id. (emphasis added). The defendant bears the burden of demonstrating a fair and just reason for withdrawal of his guilty plea. United States v. Hickok, 907 F.2d 983, 985 (10th Cir.1990). In Hickok we noted certain factors taken into account by various circuits in evaluating the "fair and just reason" requirement, but imposed no fixed rule by which such reason is or is not established, or by which the district court is fettered. Plea withdrawals are discretionary with the sentencing court. We review the district court's denial of a plea withdrawal for abuse of discretion. Id. at 984.
 
 
 5
 Wiggins asserts that his withdrawal motion is justified by the coercion he felt because of the package deal which included his co-defendant. He states that his co-defendant's liberty was partially in his hands and that he feared retaliation if he impaired his co-defendant's opportunity to strike a plea bargain. He also asserts his innocence, although somewhat ambiguously, by stating how his defense would proceed at a trial. The district court did not permit Wiggins to put on evidence with respect to these contentions, but his counsel made the contentions, partly in the written motion to withdraw the plea, and more fully in a proffer to the court at the sentencing hearing. After hearing that proffer, and considering the written motion, the court stated:
 
 
 6
 THE COURT: No, that's fine. I frankly see no legal basis, assuming everything you say is correct, I see no legal basis to allow him to withdraw his plea. Further, for the record, I am going to find that there is no coercion on the part of the government; if they want to try--make the type of agreement with the defendant that you either all plea or we go to trial, that is just a matter of conserving their resources and the court's resources. If he accepts that plea, he understands what the consequences are.
 
 
 7
 So your motion to withdraw the plea will be denied. Now let's go to your objections to the presentence report.
 
 
 8
 R.Vol. IV at 29.
 
 
 9
 Wiggins's guilty plea came in two ways, by written "Memorandum of Understanding Regarding Guilty Plea," entered into with the government, and signed by both Wiggins and his counsel, and by way of oral representations, under oath in open court, at the hearing on the entry of his guilty plea.
 
 
 10
 The written "Memorandum of Understanding Regarding Guilty Plea," entered into between Wiggins and his counsel, and the government, recites, in part:
 
 
 11
 The defendant, RONNIE G. WIGGINS, a/k/a Clifton Mack Wiggins, after consulting with his attorney, TERESA STORCH, desires and agrees to enter a plea of guilty to a violation of 18 U.S.C. 2113(a), based on the robbery of the United New Mexico Bank, Albuquerque, New Mexico, on or about November 13, 1989, in the District of New Mexico as charged in Information No. 89-517-JC.
 
 
 12
 R.Vol. I, Tab 52 at 1 (emphasis in original).
 
 
 13
 The Rule 11 hearing on Wiggins's guilty plea is relevant in its entirety. It is attached hereto and made a part of this opinion. Wiggins was directly questioned with respect to the "package deal" of plea agreements that he and his co-defendants were making with the government, and both Wiggins and his counsel stated that it did not make any difference to them whether a co-defendant went to trial. They represented to the court that Wiggins's plea "is not in any way conditional on what happens to this other fellow." R.Vol. III at 10. The court asked Wiggins directly whether anyone had attempted in any way to force him to plead guilty, and he answered "no." Id.
 
 
 14
 The court then carefully went through a detailed Rule 11 colloquy at the conclusion of which he asked the Assistant United States Attorney what the government would show if the case went to trial. At that point the Assistant United States Attorney outlined the facts of the crime which included an eyewitness identification of Wiggins as one of the individuals who robbed the bank. Mr. Wiggins agreed that those facts were essentially accurate, and pled guilty to the charge and the facts as recited. Id. at 14-15.
 
 
 15
 After the many representations by Wiggins and his counsel, the court, having had a full opportunity to observe and evaluate Wiggins and his plea, found that "the defendant is fully competent and capable of entering an informed plea; that his plea of guilty is a voluntary and knowing plea supported by an independent basis in fact containing each of the essential elements of the offense." Id. at 15.
 
 
 16
 We note in particular that Wiggins was represented throughout these proceedings by experienced defense counsel, to whom we do not attribute any complicity in deliberately misleading the court. Once such wrongful conduct is ruled out, we have a situation where highly experienced counsel, after consultation with the client, permitted the entry of a plea of guilty on findings that the plea was knowing, intelligent and voluntary, and not conditional in any way. The plea included an admission with respect to the commission of the crime, as charged. If neither the court, nor defense counsel, could detect any deficiency whatsoever in Wiggins's guilty plea, it makes Wiggins's current self-serving position seem even more certainly to be either an afterthought or a manipulation of the judicial process. That conclusion is supported by the fact that Wiggins did not move to withdraw his plea until after receipt of the presentence report, with its suggested sentence, and after the lapse of almost four months. See United States v. Vidakovich, 911 F.2d 435, 439 (10th Cir.1990), cert. denied, 111 S.Ct. 968 (1991).
 
 
 17
 After a review of the record we cannot conclude that the district court acted unjustly or unfairly. Id. (quoting authorities). We hold that the district court did not abuse its discretion in denying Wiggins's motion to withdraw his guilty plea.
 
 B.
 
 18
 The district court, following the recommendation of the United States Probation Office, departed upward from Criminal History Category IV to Category VI, and sentenced Wiggins to 87 months imprisonment, the top of the Guideline range. The departure resulted from taking into account separate state charges to which Wiggins had pled guilty with one of the conditions of the guilty pleas being that the formal judgments of conviction would not be entered until after sentencing on the federal bank robbery charge. Wiggins contends that because the judgments of conviction and sentences in the state cases had not been filed at the time of sentencing in this case, they could not be used as "prior sentences" under U.S.S.G. § 4A1.3(b). He also contends that the state charges did not constitute independent crimes committed on different occasions but, rather, were all part of his escape.
 
 
 19
 The state charges and facts regarding Wiggins's guilty pleas and proposed sentences, are detailed at paragraphs 59 and 60 of the presentence report, as follows:
 
 
 20
 59. On June 28, 1990, defendant appeared for arraignment in State District Court in Grants, New Mexico, on a twelve count Indictment charging him with the following: Escape from Jail, Aggravated Burglary, Unlawful Taking of a Motor Vehicle, Larceny of a Firearm, False Imprisonment, Battery on a Peace Officer, Criminal Damage to Property, Breaking and Entering, Robbery, Felon in Possession of a Firearm, Theft of Credit Cards. On June 29, 1990, defendant pled guilty to Theft of a Motor Vehicle, False Imprisonment and Breaking and Entering. The Court pronounced sentence of six years imprisonment on each count to run concurrent, and said period of imprisonment to run concurrent with his pending federal sentence. It was a further order of the Court that the filing of the Judgment and Sentence be withheld until the defendant is sentenced on the instant offense.
 
 
 21
 60. On August 15, 1990, the defendant appeared for plea and sentencing in State District Court in Albuquerque, New Mexico. The defendant pled guilty to Armed Robbery on Indictment 90-165. The Court imposed a nine year period of incarceration to run concurrent with his pending federal sentence. It was further ordered that the filing of the Judgment and Sentence be withheld until the defendant is sentenced on the instant offense.
 
 
 22
 R.Vol. II at 12-13.
 
 
 23
 As noted in the presentence report, par. 62, if the state crimes to which Wiggins had pled guilty, as described above, were included in the initial computation of Wiggins's criminal history category, he would have received an additional six criminal history points, totalling 13 points for his total criminal history, thus establishing a criminal history category of VI. His initially computed base offense level of 20 (which is undisputed here), when combined with a criminal history category of VI, results in a guideline imprisonment range of 70 to 87 months.
 
 
 24
 Sentencing Guideline § 4A1.3 provides, in part, as follows:
 
 
 25
 § 4A1.3. Adequacy of Criminal History Category (Policy Statement)
 
 
 26
 If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but not limited to, information concerning:
 
 
 27
 (a) prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses);
 
 
 28
 (b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;
 
 
 29
 (c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;
 
 
 30
 (d) whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense;
 
 
 31
 (e) prior similar adult criminal conduct not resulting in a criminal conviction.
 
 
 32
 A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.
 
 
 33
 United States Sentencing Commission, Guidelines Manual, § 4A1.3 (Nov. 1990).
 
 
 34
 Contrary to Wiggins's assertion, § 4A1.3 does not exclude "related crimes committed substantially contemporaneously to the federal offense...." Appellants Brief-in-Chief at 26. To the extent that the section refers to conduct which is not part of the offense charged, we are satisfied that Wiggins's robbery of the Circle K Store, and his crimes arising from the escape itself--all of which were the subject of separate charges--were criminal acts independent of one another. Cf. United States v. Tisdale, 921 F.2d 1095 (10th Cir.1990) (three burglaries of three different businesses in a shopping mall, committed on one night, constituted three separate convictions for the purpose of enhancement under 18 U.S.C. § 924(e)(1).
 
 
 35
 Wiggins's second argument, that the sentences for the state crimes to which he had pled guilty had not been "imposed," stems mostly from the fact that the presentence report continually refers to subparagraph (b) of § 4A1.3. But the probation officer also made clear that the state offenses were not being considered as prior criminal convictions for basic criminal history category computations, because judgment and sentences had not been formally entered. R.Vol. II at "Sentencing Recommendation." And, the probation officer, while citing to § 4A1.3(b), quotes the governing general provision, contained in the first paragraph, of § 4A1.3. Id. at 12, par. 58, and "Sentencing Recommendation."
 
 
 36
 In short, it is not necessary to be drawn into analysis of the word "imposed" as contained in subparagraph (b). The criminal conduct in question constitutes "reliable information" which indicates that Wiggins's "criminal history category does not adequately reflect the seriousness of [his] past criminal conduct or the likelihood that [he] will commit other crimes." U.S.S.G. § 4A1.3. We disagree with Wiggins's argument that the state crimes, to which Wiggins had pled guilty on the condition that the formal judgment of conviction and sentence not be entered until sentence was imposed for the federal charge, constituted criminal conduct which the sentencing commission fully took into account in establishing the offense level and criminal history category otherwise applicable to Wiggins.
 
 
 37
 Applying the analysis and standards of review required by our decisions in United States v. Jackson, 921 F.2d 985 (10th Cir.1990) (en banc); United States v. White, 893 F.2d 276 (10th Cir.1990); and United States v. Kalady, --- F.2d ---- (10th Cir. No. 90-8087, filed August __, 1991), we hold that the circumstances of this case warranted an upward departure, that the degree of departure (analogized to the three point addition for prior sentences provided in U.S.S.G. § 4A1.2(a)(2)) is reasonable, and that the explanation of the district court with respect both to the justification for departure, and the degree of departure, is proper. Accordingly, we hold that the district court did not err in the imposition of Wiggins's sentence.
 
 
 38
 For the reasons stated above, we AFFIRM Wiggins's conviction and sentence.
 
 ATTACHMENT
 FOR THE DISTRICT OF NEW MEXICO
 HONR. JOHN E. CONWAY, JUDGE PRESIDING
 
 39
 United States of America, Plaintiff,
 
 
 40
 vs.
 
 
 41
 Ronnie Wiggins, Defendant.
 
 No. CR 89-517 JC
 REPORTER'S TRANSCRIPT OF PROCEEDINGS
 May 30, 1990
 VOLUME 1
 Barbara K. Harris
 Official Court Reporter
 
 42
 (505) 842-9494
 
 Appearances
 
 43
 for the plaintiff:
 
 Robert Baca
 Assistant United States Attorney
 
 44
 for the defendant:
 
 Teresa E. Storch
 Deputy Federal Public Defender
 
 45
 THE COURT: The first matter today is United States v. Ronnie G. Wiggins, 89-517 JC.
 
 
 46
 MR. BACA: Robert Baca for the United States.
 
 
 47
 MS. STORCH: Teresa Storch, with the defendant who is present in court, your Honor.
 
 
 48
 THE COURT: It is my understanding he is going to plead guilty to an information.
 
 
 49
 MS. STORCH: That's correct, your Honor.
 
 
 50
 THE COURT: Please swear in the defendant.
 
 
 51
 (WHEREUPON, the defendant was duly sworn.)
 
 EXAMINATION
 BY THE COURT:
 
 52
 Q. Do you understand that you are now under oath and if you answer any of my questions falsely you may later be prosecuted in another prosecution for perjury or making a false statement?
 
 
 53
 A. I do.
 
 
 54
 Q. What is your full name?
 
 
 55
 A. Ronnie Gerald Wiggins.
 
 
 56
 Q. What is your date of birth?
 
 
 57
 A. 6/15/64.
 
 
 58
 Q. What is your education?
 
 
 59
 A. I have a semester of college.
 
 
 60
 Q. Where was that?
 
 
 61
 A. Texas.
 
 
 62
 Q. Have you been treated for any mental illness or addiction to narcotic drugs of any kind?
 
 
 63
 A. No, I haven't.
 
 
 64
 Q. Are you presently under the influence of any drug or medication or alcoholic beverage of any kind?
 
 
 65
 A. No, none.
 
 
 66
 Q. Have you received a copy of the information, the written charges filed by the United States Attorney?
 
 
 67
 A. I have.
 
 
 68
 Q. Have you had an opportunity to discuss those with Ms. Storch, your attorney?
 
 
 69
 A. I have.
 
 
 70
 Q. Are you fully satisfied with the representation that you have received from Ms. Storch as your attorney?
 
 
 71
 A. Yes, I have.
 
 
 72
 Q. Do you have any complaints whatsoever about her representation of you?
 
 
 73
 A. I do not.
 
 
 74
 Q. I am going to ask you a series of questions about waiving your right to be indicted by a grand jury. Do you understand you have a constitutional right to be charged by an indictment of a grand jury, but that you can waive that right and consent to being charged by an information filed by the United States Attorney? Do you understand that?
 
 
 75
 A. I do.
 
 
 76
 Q. Instead of an indictment, the felony charges against you are being brought by the United States Attorney by the filing of an information.
 
 
 77
 A. Yes.
 
 
 78
 Q. Unless you waive indictment you may not be charged with a felony, unless a grand jury finds by return of an indictment that there is probable cause to believe that a crime has been committed and that you committed the crime?
 
 
 79
 A. I understand that.
 
 
 80
 Q. If you do not waive indictment the government may present the case to the grand jury and request that it indict you.
 
 
 81
 A. I do.
 
 
 82
 Q. That a grand jury is composed of at least 16 and not more than 23 persons and at least twelve grand jurors must find that there is probable cause to believe that you committed the crime with which you are charged before you may be indicted?
 
 
 83
 A. I do.
 
 
 84
 Q. The grand jury might or might not indict you?
 
 
 85
 A. I understand that.
 
 
 86
 Q. If you waive indictment by the grand jury the case will proceed against you today just as though you had been indicted by a grand jury.
 
 
 87
 A. I understand.
 
 
 88
 Q. Have you discussed the matter of waiving your right to be indicted by a grand jury with your attorney?
 
 
 89
 A. I have.
 
 
 90
 Q. Do you understand your right to be indicted by a grand jury?
 
 
 91
 A. I do.
 
 
 92
 Q. Have there been any threats or promises made to you to induce you to waive indictment by a grand jury?
 
 
 93
 A. There has not.
 
 
 94
 Q. Do you wish to waive your right to be indicted by a grand jury?
 
 
 95
 A. Yes, I do.
 
 
 96
 THE COURT: Ms. Storch, do you know of any reason why he should not waive his right to be indicted by a grand jury?
 
 
 97
 MS. STORCH: No, your Honor.
 
 
 98
 THE COURT: I find that he has competently waived his right to be indicted by a grand jury.
 
 
 99
 MR. BACA: I have filed with the Court the waiver of the indictment and the original of the plea agreement. The information has been filed by the Court.
 
 
 100
 THE COURT: According to the terms of your plea agreement, you will enter a plea of guilty to robbery of United New Mexico Bank on November 13, 1989. After you have been sentenced the superseding indictment in this case will be dismissed. The government makes no agreement as to the sentence that you will receive. You and the United States stipulate that you have demonstrated a recognition of your criminal conduct and take a personal responsibility for it and that you are entitled to a reduction of two levels under the sentencing guidelines. You and the United States acknowledge that that is not binding on me at the time of sentencing.
 
 
 101
 Do you understand that to be the terms of your plea agreement?
 
 
 102
 THE DEFENDANT: I do.
 
 
 103
 THE COURT: Ms. Storch, have I correctly summarized the terms of the plea agreement?
 
 
 104
 MS. STORCH: Yes, your Honor, you have.
 
 
 105
 THE COURT: Has anyone made any other or different promise or assurance to you of any kind in an effort to induce to you enter a plea of guilty in this case?
 
 
 106
 MS. STORCH: Your Honor, I would state at this point in time that this plea agreement is really a package deal with three codefendants in the case, and one codefendant is pleading guilty today and one codefendant is going to be pleading guilty within the next couple of weeks, and my client has entered the plea agreement in this case with the understanding that all three codefendants are going to be pleading under this package deal.
 
 
 107
 THE COURT: What if one of them decides not to plea?
 
 
 108
 MS. STORCH: I believe that it is all set, your Honor.
 
 
 109
 MR. BACA: Your Honor, the two individuals who are pleading today, should the third one not plead, we could take him to trial without affecting this plea agreement. The package deal was the Government's requirement originally. Since these two are pleading the third one would not make any difference, and that is the one we could take to trial if necessary.
 
 
 110
 MS. STORCH: I am just making it clear for my client's sake that actually the third codefendant stood to lose a lot more under a conviction in this case. The plea agreement in this case is to something that gets him underneath the maximum amount of time as a career offender. And my client's understanding is that the government has offered that plea to him and that he has accepted and that is what I mean by a package deal.
 
 
 111
 THE COURT: But it doesn't make any difference to your client whether this other fellow pleads or not.
 
 
 112
 MS. STORCH: If the other gentleman decides to go to trial, that is the other gentleman's case--decision, rather. My client's concern is that the government does not proceed against the third codefendant with the indictment of a bank robbery to trial and that is--my client's understanding is that the government is not going to be doing that and is offering this plea. If the codefendant decides not to take that, that does not affect my client's plea in this case.
 
 
 113
 My client has entered a plea with the understanding the codefendant has been offered this plea and is going to--and whether the codefendant takes it or not is immaterial, just that that offer has been made, and I am satisfied and I believe my client is satisfied that that is the case. Correct?
 
 
 114
 THE DEFENDANT: Yes.
 
 
 115
 MS. STORCH: He asked me to state it on the record, your Honor.
 
 
 116
 THE COURT: Your client pleading is not in way conditional on what happens to this other fellow.
 
 
 117
 MS. STORCH: No, it is not.
 
 BY THE COURT:
 
 118
 Q. All right. Has anyone attempted in any way to force you to plead guilty in this case?
 
 
 119
 A. No.
 
 
 120
 Q. Do you understand that the offense to which you are pleading guilty is a felony offense?
 
 
 121
 A. I do.
 
 
 122
 Q. That if your plea is accepted you will be adjudged guilty of that offense?
 
 
 123
 A. I understand.
 
 
 124
 Q. Such adjudication may deprive you of valuable civil rights. Such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm of any kind.
 
 
 125
 A. I understand.
 
 
 126
 Q. The maximum sentence that you can receive is up--is not more than 20 years in prison, not more than a $250,000 fine or any combination thereof, plus a special penalty assessment of fifty dollars. Do you understand those to be the maximum sentence--that to be the maximum sentence that you can receive?
 
 
 127
 A. I understand.
 
 
 128
 Q. You will be sentenced under the Sentencing Reform Act of 1984, and the United States Sentencing Commission has formulated guidelines for judges to follow in determining the sentence in a criminal case. Have you and Ms. Storch talked about how the Sentencing Commission guidelines might apply to your case?
 
 
 129
 A. Yes.
 
 
 130
 Q. Do you understand that the court will not be able to determine the guideline sentence for your case until after the presentence report has been completed and you and the government have had an opportunity to challenge the facts reported by the probation office?
 
 
 131
 A. I understand.
 
 
 132
 Q. Do you also understand that, after it has been determined what guideline applies to a case, the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than that sentence called for in the guidelines?
 
 
 133
 A. I understand.
 
 
 134
 Q. Do you also understand that under some circumstances you or the government may have the opportunity to appeal the sentence that I impose?
 
 
 135
 A. I do.
 
 
 136
 Q. Do you also understand that parole has been abolished and if you are sentenced to prison you will not be released on parole?
 
 
 137
 A. I do.
 
 
 138
 Q. Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea?
 
 
 139
 A. I do.
 
 
 140
 Q. You would then have the right to a trial by jury during which you would also have the right to the assistance of counsel for your defense?
 
 
 141
 A. I understand.
 
 
 142
 Q. That you would have the right to see and hear all of the witnesses and have them cross-examined in your defense?
 
 
 143
 A. I do.
 
 
 144
 Q. That you would have the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense?
 
 
 145
 A. I understand.
 
 
 146
 Q. You would have the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify on your behalf?
 
 
 147
 A. I do.
 
 
 148
 Q. Do you further understand that, by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial by jury, as well as those other rights as I have just stated them?
 
 
 149
 A. I understand.
 
 
 150
 Q. The charge against you is that you by force or intimidation did willfully take from a person or presence of Terry Klaus, a teller at the United New Mexico Bank, money in the approximate amount of $2807 belonging to the bank, and that it was insured by the Federal Deposit Insurance Corporation.
 
 
 151
 What would the government be able to prove if we went to trial in this matter?
 
 
 152
 MR. BACA: Your Honor, if this matter were to go to trial, the United States would show that on the 13th day of November, 1989, in Albuquerque, two individuals entered the United New Mexico Bank at 9700 Montgomery, Northeast, and handed Terry Klaus a note, told her to put the money on the counter and nobody would get hurt. That following the--the day following the bank robbery three individuals were arrested and on them was found bait money. And their photographs were shown to Terry Klaus, the bank teller who identified Mr. Wiggins and Mr. Gardener as the individuals who robbed her on November 13, 1989.
 
 
 153
 The note was taken to the crime lab of the FBI and fingerprints of two of the defendants were found on it. The paper that was found, which was part of the note, they found in the car where the individuals were arrested, matched the paper that was found that came from the bank note. And the bank is insured by the Federal Deposit Insurance Corporation, your Honor.
 
 BY THE COURT:
 
 154
 Q. Mr. Wiggins, how do you plead to the information, guilty or not guilty?
 
 
 155
 A. Guilty.
 
 
 156
 Q. Tell me in your own words what it is you understand you are pleading guilty to.
 
 
 157
 A. I am pleading guilty to participation in the robbery of United New Mexico Bank, Albuquerque, on November 13, 1989.
 
 
 158
 Q. Pretty much what the United States Attorney said?
 
 
 159
 A. What?
 
 
 160
 Q. Pretty much what the United States Attorney said?
 
 
 161
 A. Yeah, pretty much.
 
 
 162
 THE COURT: It is the finding of the court in the case of United States v. Ronnie G. Wiggins that the defendant is fully competent and capable of entering an informed plea; that his plea of guilty is a voluntary and knowing plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted and you are now adjudged guilty of that offense.
 
 
 163
 There will be a written presentence report prepared by the probation office and you will be requested to give them information. At such time as you give them that information your attorney may be present if you so desire.
 
 
 164
 Prior to the time of sentencing you and your attorney will be given an opportunity to review the presentence report. At the time of sentencing you and your attorney will be given an opportunity to speak on your behalf.
 
 
 165
 Sentencing will be August 8, 1990 at 1:15 p.m. You will be remanded to the custody of the United States Marshal.
 
 
 166
 MS. STORCH: Thank you.
 
 
 167
 (WHEREUPON, there were other court matters.)
 
 REPORTER'S CERTIFICATE
 
 168
 I, Barbara K. Harris, a Certified Shorthand Reporter for the United States, DO HEREBY CERTIFY that I reported the foregoing case in stenographic shorthand and transcribed, or had the same transcribed under my supervision and direction, the foregoing matter, and that the same is a true and correct record of the proceedings had at that time and place.
 
 
 169
 I FURTHER CERTIFY that I am neither employed by nor related to any of the parties or attorneys in this case, and that I have no interest whatsoever in the final disposition of this case in any court.
 
 
 170
 WITNESS MY HAND AND SEAL this 5th day of December, 1990.
 
 
 171
 /s/ Certified Shorthand Reporter
 
 Barbara K. Harris
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10 36.3