FILED
United States Court of Appeals
Tenth Circuit

June 28, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EVELYNE JAMES,

    Defendant - Appellant.

No. 17-2048
(D.C. No. 1:07-CR-02251-MV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

Evelyne James, a federal prisoner sentenced to 25 years' imprisonment after pleading guilty to voluntary manslaughter of a child, appeals from the district court's denial of her request to withdraw her plea. The government has filed a motion to enforce the appeal waiver included in her plea agreement. We grant the motion and dismiss this appeal.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Some procedural history will put the motion in context. Ms. James entered her plea, pursuant to the agreement now invoked by the government, in May 2012. In exchange for her plea, the government dismissed a first-degree murder charge and stipulated to a sentence between 25 and 27 years for voluntary manslaughter. The agreement states that Ms. James "knowingly waives the right to appeal her conviction and any sentence in this case, except to the extent, if any, that the Court may impose a sentence that differs from that agreed to by the parties under Federal Rule of Criminal Procedure 11(c)(1)(C)." Mot. to Enforce, Ex. 1 at 6. She also waived her "right to collaterally attack any sentence imposed in [the] case except on the grounds of ineffective assistance of counsel." *Id.* at 7.

Three weeks later, but before sentencing, Ms. James sent a letter to the district court seeking to withdraw her plea and to obtain substitute counsel. The court denied the requests, sentenced her to a 25-year term, and entered judgment. No appeal followed.

Ms. James later filed a motion for relief under 28 U.S.C. § 2255 arguing, among other things, that her counsel had rendered ineffective assistance by failing to take an appeal from the denial of her request to withdraw her plea. The government opposed this claim in part on the basis that her appeal waiver undercut any prejudice from this omission. It also eventually filed a motion to enforce the waiver. Acting on the magistrate judge's recommendation, the district court granted relief on the ineffective-assistance claim. The court vacated and reinstated its prior judgment to give Ms. James the opportunity to perfect the appeal counsel had forgone, and also

2

denied the government's motion to enforce the appeal waiver as premature. When Ms. James did file the appeal, the government filed with this court the instant motion to enforce the appeal waiver.

The government's motion argues that the waiver applies to this appeal, that it was knowing and voluntary, and that there are no circumstances evident on the record to suggest that enforcement of the waiver would give rise to a miscarriage of justice. *See generally United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (summarizing three components of court's inquiry when enforcing appeal waiver). Ms. James disputes all three points and also contends that the government has forfeited the right to enforce the appeal waiver. We begin with the last point.

## I. GOVERNMENT FORFEITURE OF APPEAL WAIVER

Ms. James argues that the government forfeited its right to enforce the appeal waiver by failing to assert the waiver in timely fashion in response to her § 2255 motion. But that motion and this appeal are two distinct proceedings implicating different waiver provisions in the plea agreement. And, as noted above, the waiver provision limiting the right to seek collateral review specifically excepts claims of ineffective assistance of counsel. Thus, the appeal waiver now at issue was not previously available (as the district court recognized in denying the government's prior motion to enforce as premature), and the collateral-review waiver that was available below was not applicable to the ineffective-assistance claim.

Nor can the government be deemed to have forfeited the appeal waiver through delay in invoking it in opposition to Ms. James' § 2255 motion, on the theory that the waiver would have conclusively undercut her claim seeking a delayed direct appeal based on counsel's failure to perfect a timely one.  Because appeal waivers are not always enforceable (and can be forfeited even when otherwise applicable), we have held that such delayed-appeal claims are not defeated by the existence of waivers that the government could seek to enforce once the appeal is brought.  *See United States v. Garrett*, 402 F.3d 1262, 1266-67 (10th Cir. 2005); *see also United States v. Parker*, 720 F.3d 781, 786 & n.6 (10th Cir. 2013).  In sum, the appropriate time for the government to enforce Ms. James' appeal waiver is now.

## II.  ENFORCEABILITY OF APPEAL WAIVER

### A.  Scope of the Waiver

Ms. James argues that this appeal falls outside the waiver because she "is not appealing her sentence, rather, she is appealing the denial of her motion to withdraw her plea."  Resp. to Mot. to Enforce (Resp.) at 6.  But her waiver also covered the right to appeal her conviction, and this court explained some time ago "'that an appeal of a denial of a motion to withdraw a guilty plea is an attempt to contest a conviction on appeal and thus falls within the plain language of an appeal waiver provision.'"  *United States v. Leon*, 476 F.3d 829, 832 (10th Cir. 2007) (per curiam) (brackets omitted) (quoting *United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001)).  Ms. James contends the appeal waiver at issue in *Elliott* (she does not mention *Leon*) was broader in some respects than her waiver, but the material point is

4

that she waived the right to appeal her conviction and, under our case law, that is precisely what she is attempting to do.

## B. Knowing and Voluntary Waiver

Ms. James also argues that her plea, and by extension her appeal waiver, was not knowing and voluntary. *See generally United States v. Rollings*, 751 F.3d 1183, 1186 (10th Cir. 2014) ("[I]n determining whether an appellate waiver is knowing and voluntary [and thus enforceable] under *Hahn*, we may consider whether the entire plea agreement, including the plea, was entered knowingly and voluntarily."). The defendant bears the burden of establishing that an appeal waiver was not knowing and voluntary. *Id.* at 1187. In resolving this issue, we consider "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily" and "whether there was an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.* at 1188 (internal quotation marks omitted).

We have reviewed these sources and agree with the government that they fully support the knowing and voluntary nature of Ms. James' plea and appeal waiver. *See United States v. Tanner*, 721 F.3d 1231, 1234 (10th Cir. 2013) (per curiam) (noting synergistic effect of representations in plea agreement and colloquy "will often be conclusive" in showing appeal waiver to be knowing and voluntary). Ms. James objects that her short, mostly yes-or-no type responses during the colloquy did not reflect a "serious interactive dialogue with the Court." Resp. at 11. But "'[t]here is no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and

5

voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple "Yes, your Honor" is sufficient.'" *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006) (quoting *United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005)). And the fact that the magistrate judge at one point said to Ms. James "I want you to breathe for me because I don't want to see you faint . . . and if you need to sit down, you let me know," Resp. at 12 (brackets and internal quotation marks omitted), does not, as Ms. James suggests, demonstrate that her understanding of the colloquy was somehow suspect.

Ms. James further argues that she acted quickly in seeking to withdraw her plea and that her alacrity supports her allegation that, notwithstanding her contrary representations on the record, she had not understood the proceedings or the terms of her agreement. In *United States v. Vidakovich*, 911 F.2d 435, 439 (10th Cir. 1990), this court stated that "a swift change of heart," such as one that takes place within "a day or so" of a plea, can lend support to a claim that the plea had not been knowing and voluntary. But Ms. James took over three weeks to act. And her testimony at the hearing on her motion to withdraw her plea indicates she acted out of second thoughts about the sentencing range specified in the agreement and on the prompting of a fellow inmate who told her she should have been offered more plea deals. *See* Mot. to Enforce, Ex. 3 at 14-15. Such after-the-fact reassessments do not show that her plea was unknowing or involuntary when it was made.

Ms. James contends her letter requesting to withdraw her plea evidences her lack of understanding of the plea and the pressure imposed by counsel and her own

6

circumstances to agree to it. As for lack of understanding, Ms. James points to a statement in the letter that counsel "confused [her] by saying he changed [her] plea from involuntary manslaughter to voluntary manslaughter," as the latter "carries a longer term of imprisonment." Resp., Ex. A at 1. The district court examined counsel on this point at the hearing prompted by the letter. Counsel explained that sentencing was of primary importance to both sides, with Ms. James intent on avoiding a life term. Plea negotiations initially involved offers and counter-offers regarding the appropriate term of imprisonment. Upon striking the compromise noted above (between the 20-year offer counsel opened with and the government's 30-year counter-offer)—which Ms. James specifically accepted—negotiations then proceeded to specification of an offense that could fit both the sentence and the facts of the case. When problems with using involuntary manslaughter (initially proposed for this purpose) were fleshed out, the parties agreed to use voluntary manslaughter instead. After counsel recounted this negotiation process at the hearing, Ms. James admitted his testimony did "ring a bell." Mot. to Enforce, Ex. 3 at 13. These events may suggest that Ms. James had forgotten, or not fully appreciated, some of the legal nuances involved in the negotiation process leading to the plea offer she accepted, but they do not show she did not knowingly enter the plea for the straightforward sentencing benefit explained by counsel.[1]

---

[1] For the same reason, the fact that the court acknowledged at the hearing that confusion on Ms. James' part with respect to the rationale for selecting voluntary

(continued)

7

Ms. James' letter also stated that counsel had told her "there is and will be only one plea agreement offered so [she] must sign [what] has been offered." Resp., Ex. A at 1. She cites no authority for the tacit legal premise here that being told (correctly or not) that a plea offer is the only one forthcoming makes the defendant's free acceptance of that offer—for the benefits it undeniably bestows in contrast to the uncertainties of trial on a far more serious charge—involuntary or unknowing. In any event, at the hearing counsel denied making such a statement, explaining it would have been plainly inconsistent with the parties' open, back-and-forth plea negotiations that involved multiple offers from the government. When given the opportunity to respond to counsel's statements at the hearing, Ms. James declined, leaving them unchallenged. When opposing a motion to enforce an appeal waiver, "it is the defendant who bears the burden of demonstrating [her] waiver was not knowing and voluntary." *United States v. White*, 584 F.3d 935, 948 (10th Cir. 2009) (internal quotation marks omitted). Under the circumstances, Ms. James has not carried that burden on the basis of her allegation that she was told the plea agreement she accepted was the one and only offer that would be made. Her associated claim that her plea was involuntary because she felt rushed into it is inconsistent with her statements on the record at the plea hearing affirming that she

---

manslaughter would not be surprising, *see* Resp. at 12-13, does not imply that her acceptance of the plea was unknowing or involuntary.

8

had had sufficient time to consult with counsel and that no one was pressuring her to plead guilty.[2]

Finally, Ms. James insists an allegation in her § 2255 motion (filed two years after her plea) further evidences her overall lack of understanding. Specifically, where the motion form asks why a challenge to her sentence had not previously been raised on direct appeal, she stated she "did not understand I could appeal." Resp. at 13 (brackets and internal quotation marks omitted). Leaving aside the conclusory, collateral, and chronologically remote character of this statement, it does not show she misunderstood her plea agreement—in particular, the appeal waiver included therein. To the contrary, it demonstrates a continuing awareness of that waiver. It would, rather, be of more concern if she indicated that the agreement had *not* constrained her right to appeal.

## C. Miscarriage of Justice

Ms. James raises several arguments under the miscarriage-of-justice rubric. One of these is simply a reassertion of an objection we have already rejected, i.e., that it would be a miscarriage of justice to allow the government to enforce the appeal waiver in the plea agreement, because it has waived its right to do so. The rest of her arguments are meritless.

---

[2] In addition, her suggestion that "memory issues" could have "contributed to her confusion" in some unspecified way, Resp. at 13, is far too vague and conclusory to undermine the validity of her plea.

Ms. James contends that "enforcing the waiver with respect to [her] motion to withdraw [her] plea would amount to forcing upon her a waiver of her right to a critical part of her sentencing without the requisite explicit knowing and voluntary relinquishment of that right." Resp. at 15. If she means, literally, that the waiver was improperly applied by the district court to the motion to withdraw itself, she is incorrect. The district court did not refuse to *consider* the motion on the basis that such relief had been waived but, rather, denied it on the merits because Ms. James had failed to demonstrate "*any basis* for withdrawal of [her] plea agreement." Mot. to Enforce, Ex. 3 at 27 (emphasis added). And to the extent she is simply reasserting her argument that her plea was not knowing and voluntary, we have already held her showing in that regard is inadequate.[3]

Similarly unclear and unsubstantiated is Ms. James' objection that "[p]recluding [her] challenge to the district court's misunderstanding of its discretion to allow for the plea to be withdrawn is likewise unlawful because it would uphold a waiver contained in an agreement the district court unlawfully accepted. . . . The

---

[3] Her associated statement that "to determine if a waiver is otherwise unlawful the focus must be on the rights the waiver purportedly relinquishes," Resp. at 15 (citing *United States v. Smith*, 500 F.3d 1206, 1212-13 (10th Cir. 2007)), suggests she may intend to bolster her objection to the appeal waiver by pointing to the fact that it will result in her losing appellate review of the denial of her motion to withdraw her plea. If so, her argument stands *Smith* on its head. In that case we clarified that the inquiry into the lawfulness of a waiver must focus "on the right relinquished," i.e., the right *to appeal*, and not "the result of the proceeding," i.e., the alleged error for which appellate review is sought. *Smith*, 500 F.3d at 1213. In any event, Ms. James has not shown that the discretionary denial of her motion to withdraw her plea remotely approached a miscarriage of justice.

error goes to the validity of the waiver." Resp. at 15. She points to nothing in the record for her oblique claim that the district court somehow misunderstood its discretion to allow the withdrawal of her plea. As for her conclusory reference to the court's unlawful acceptance of the plea agreement, we have, again, already held that Ms. James has failed to show that her plea was not knowing and voluntary.

### III. CONCLUSION

Ms. James has failed to satisfy her burden of demonstrating that the appeal waiver in her plea agreement should not be enforced. Accordingly, the government's motion is granted and this appeal is dismissed.

Entered for the Court
Per Curiam

11