**UNITED STATES of America,
Plaintiff,**

**v.**

**Andrew B. ROWZER, Defendant.**

**No. 98–40074–01–SAC.**

United States District Court,
D. Kansas.

Nov. 16, 1999.

Mark L. Bennett, Jr., Mark L. Bennett, Jr. & Associates, Topeka, KS, pro se.

Jerold E. Berger, Topeka, KS, pro se.

Anthony W. Mattivi, Office of U.S. Atty., Topeka, KS, for plaintiff.

Andrew B. Rowzer, Topeka, KS, pro se.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On August 5, 1998, the grand jury returned a one count indictment charging the defendant, Andrew B. Rowzer, with violation of 18 U.S.C. § 922(g), felon in possession of a firearm. The indictment lists eleven different firearms including five assault weapons which Rowzer allegedly possessed. The firearms were apparently seized from Rowzer's home or shed near the defendant's home.

This case was set for a jury trial to commence on June 15, 1999. At the time, the defendant was represented by retained counsel, Jerold Berger. Immediately before selection of the jury was about to commence, the parties informed the court that they had reached a settlement in this case and that a plea agreement reflecting the terms and conditions of that settlement would be drafted. The salient terms of the plea agreement are as follows:

(1) The defendant agreed to plead to guilty to both counts charged in a su-

perseding information;[1] that the superseding information charges one count of money laundering in violation of 18 U.S.C. § 1957 and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g);

(2) In exchange for his plea, the government agreed to bring no further criminal charges against Rowzer for conduct resulting from the activities which form the basis of the indictment or for conduct which is known to the government at the time of the plea agreement.

(3) With respect to sentencing:

a) The defendant acknowledges and understands that all information in the possession of the government concerning the defendant's involvement in the offense as well as the nature, scope and extent of the defendant's cooperation will be made known to the Court for the purpose of imposing an appropriate sentence.

b) The Government will not object to the defendant's request that he receive a 2–level adjustment for acceptance of responsibility pursuant to this plea agreement is contingent upon the defendant's continuing manifestation of acceptance of responsibility. Should the defendant deny his involvement, give conflicting statements as to his involvement or engage in additional criminal conduct, including, but not limited to, personal use of a controlled substance, the government shall not be bound to recommend acceptance of responsibility.

Paragraph 5 of the plea agreement provides: "The defendant understands that the foregoing recommendations by the government as to the sentence to be imposed do not bind the court and that the defendant has no right to withdraw the plea of guilty in the event the court does not accept the government's recommendation."

Prior to accepting the defendant's pleas, the court engaged the defendant and his counsel in an extensive colloquy regarding the terms of the plea agreement, the maximum and minimum penalties the defendant faced by entering his pleas, and the defendant's understanding of the impact of the plea agreement. In response to the court's inquiry, the defendant stated that he understood that he could not withdraw his pleas if the court did not accept the government's sentencing recommendation and that the only circumstance in which he could withdraw his plea would be if the court did not grant the government's motion to dismiss the indictment at the time of sentencing. The defendant stated that no one had forced him to plead guilty and that he was pleading guilty because he was guilty. The defendant also stated that no one had promised him what sentence he would receive if he pleaded guilty. The defendant stated that he understood the constitutional rights he waived by entering a guilty plea and the consequences of his pleas.

The following is an excerpt of the transcript of the change of plea hearing regarding the government's proffer of facts it would prove had this matter proceeded to trial:

THE COURT: Okay. I'd like to ask the government to make a representation as to what you are prepared to prove.

MR. MATTIVI: Your Honor, on the 20th day of June, 1997, this defendant presented himself at Davis Cycle in Shawnee County, Kansas, and purchased a 1997 Honda CVR motorcycle, the list price of which was $10,583.59, and the government submits it would prove at trial that the proceeds used for this purpose were derived from the specified unlawful activity of narcotics distribution in violation of 21 United States to code section 841, thus making that transaction—a money laundering offense under title 18 United States Code section 1957.

The government further submits it would prove that on the 25th day of June, 1997, officers from the Kansas Bureau of Investigation and the Jackson County

---

1. The court accepted the defendant's waiver of indictment.

sheriff's department executed a search warrant at the home of the defendant, who on that date was a prohibited person by means of two prior felony convictions, one in Shawnee County for burglary and another in Pottawatomie County for burglary. At the time of that search warrant, the defendant was found to be in possession of 11 different firearms, each of which is set out in the superseding information, and which the government submits was in violation of title 18 United States Code section 922(g).

THE COURT: All right, thank you. Counsel for the defendant, you've heard what the Assistant United States Attorney has said would be the evidence offered against your client in this case. Do you agree that that could be offered against him?

MR. BERGER: Yes, your Honor, I do.

THE COURT: And Mr. Rowzer, you've heard what your counsel has said, the Assistant United States Attorney has said as to the evidence that could be offered against you, have you not heard that?

DEFENDANT ROWZER: Yes, sir.

THE COURT: All right. Is that true?

DEFENDANT ROWZER: That I'm in violation of 922(g)? Yes, sir.

THE COURT: All right the things that he said in regard to the factual.

DEFENDANT ROWZER: Yes, sir.

THE COURT: As it relates to the, what is it, can I call it a motorcycle? That might not be the right terminology. And also as to the handguns and other guns?

DEFENDANT ROWZER: Yes, sir.

THE COURT: All right. It's all true, correct?

DEFENDANT ROWZER: Yes, sir.

Transcript of change of plea hearing at 17–19.

Only after meticulously following the protocols established by Fed.R.Crim.P. 11 did the court accept the defendant's plea.

This case comes before the court upon Rowzer's "Motion to Withdraw and Set Aside Pleas of Guilty Previously Entered Herein" (Dk.48). Rowzer filed his motion to withdraw his guilty plea on August 20, 1999, over two months after the date that he entered his guilty plea. Rowzer is now represented by retained counsel, Mark Bennett.

Rowzer makes several allegations of ineffective assistance of counsel in his motion to withdraw his plea. Included among his claims that Berger's performance was constitutionally deficient are: (1) Berger's alleged failure to file pretrial motions (2) Berger's alleged failure to explain the essential elements of the crime of unlawful possession of a firearm/failure to explore the defenses available to the charge (3) Berger's convincing him to plead to the money laundering count and (4) Berger's inaccurate estimate of the likely sentencing range. In a supplemental pleading, the defendant argues that the superseding information charging him with money laundering is defective as it omits an essential element of the crime charged.

The government responds, opposing the defendant's motion. In its brief, the government recounts the history of this case. The government also provides a summary of the evidence it would have offered against the defendant had this case proceeded to trial. The government's brief explains the substantial benefits the defendant enjoys by the operation of the plea agreement—namely the limitation of potential criminal liability. In short, the government contends that the defendant cannot carry his burden of proving that it is appropriate to withdraw his pleas.

On November 9, 1999, the court conducted a hearing to consider the evidence and arguments offered by the parties. Having considered that evidence, the briefs and arguments of counsel, and the applicable law, the court is now prepared to rule.

### Voluntariness of Guilty Plea

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary

and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (*quoting North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). A guilty plea entered upon the advice of counsel is invalid if the plea was coerced, *Osborn v. Shillinger,* 997 F.2d 1324, 1327 (10th Cir.1993), or if the advice of defendant's counsel was not within the range of competence demanded of attorneys in criminal cases, *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369; *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

*United States v. Carr,* 80 F.3d 413, 416 (10th Cir.1996).

### Withdrawal of Guilty Plea

■■■ "There is no absolute right to withdraw a guilty plea." *United States v. Rhodes,* 913 F.2d 839, 845 (10th Cir.1990). *See United States v. Vidakovich,* 911 F.2d 435, 439 (10th Cir.1990) ("[A] defendant does not have any absolute right to withdraw his plea of guilty even though the motion is made before sentencing."). Under Fed.R.Crim.P. 32(e), the district court may permit a defendant to withdraw a plea of guilty before sentence is imposed "if the defendant shows any fair and just reason" for doing so.

### Burden of Proof

■■■ "The defendant has the burden of establishing that there is a fair and just reason for allowing withdrawal of his plea." *United States v. Gould,* 78 F.3d 598 (10th Cir.1996) (Table; available at 1996 WL 108497) (*citing United States v. Gordon,* 4 F.3d 1567, 1572 (10th Cir.1993)). "Where the defendant meets his burden [of establishing that there is a fair and just reason for allowing the withdrawal of his plea], the government then has the opportunity to demonstrate prejudice." *Gould,* 78 F.3d 598, 1996 WL 108497 at *1 (*citing* Fed.R.Crim.P. 32(d) advisory committee's note to 1983 amendment.). *See* Fed. R.Crim.P. 32, Advisory Committee Notes, 1983 Amendment (adopting position taken by the Second Circuit in *United States v. Saft,* 558 F.2d 1073 (2nd Cir.1977) that "there is no occasion to inquire into the matter of prejudice unless the defendant first show a good reason for being allowed to withdraw his plea."). *See United States v. Hickok,* 907 F.2d 983, 986 (10th Cir. 1990) ("Unless a defendant presents a 'fair and just reason' for the withdrawal, the court need not consider prejudice to the government.") (citation omitted).

The Advisory Committee, in adding the "fair and just reason" standard to Rule 32 in 1983, articulated this justification for imposing this burden on the defendant:

> Given the great care with which pleas are taken under this revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice.
>
> Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a "grave and solemn act," which is "accepted only with care and discernment."

Fed.R.Crim.P. 32, Advisory Committee Notes, 1983 Amendment (*quoting United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975) (*quoting Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970))). In *United States v. Hyde,* 520 U.S. 670, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997), the Supreme Court articulated a similar justification for allocating the defendant the burden of demonstrating a "fair and just" reason for withdrawing his plea:

> After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has

explicitly announced that it accepts the plea, [a defendant cannot] withdraw his guilty plea simply on a lark. *Id.* at 676, 117 S.Ct. 1630.

### Standard of Review

 The district court's denial of a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *United States v. Jones,* 168 F.3d 1217, 1219 (10th Cir.1999) (*citing United States v. Carr,* 80 F.3d 413, 419 (10th Cir.1996)).

Although it is within the sound discretion of the district court to determine what circumstances justify granting a motion to withdraw a guilty plea, such motions should be "freely allowed, viewed with favor, treated with liberality, and given a great deal of latitude." *Id.* We will not reverse the district court unless Defendant can demonstrate that the district court abused its discretion by acting unjustly or unfairly. *Id.*

*Jones,* 168 F.3d at 1219.

### Factors for Determining Whether to Permit Withdrawal of Plea

 In determining whether a defendant has carried his burden of demonstrating a fair and just reason for allowing withdrawal of his guilty plea, the court should consider the following factors:

(1) whether the defendant has asserted his innocence;

(2) prejudice to the government;

(3) delay in filing defendant's motion;

(4) inconvenience to the court;

(5) defendant's assistance of counsel;

(6) whether the plea was knowing and voluntary; and

(7) waste of judicial resources.

*Id.* (*citing United States v. Gordon,* 4 F.3d 1567, 1572 (10th Cir.1993)).

In addition to the seven factors routinely listed by the Tenth Circuit, in *United*

*States v. Glover,* 911 F.2d 419 (10th Cir. 1990), the Tenth Circuit suggested one additional factor for the court to consider in determining whether the defendant has demonstrated a fair and just reason for withdrawing his plea: the likelihood of conviction. In *Glover,* the Tenth Circuit stated: "In the face of [defendant's] admitted and palpable guilt, permitting the defendant to withdraw his plea would only result in a postponement of the inevitable." *Id.* at 421 (denying withdrawal of plea motion).

### Analysis

*(1) Assertion of innocence:*

In the brief prepared by his new counsel, the defendant claims that he is innocent and that he would not have pleaded guilty but for the errors and omissions of Berger, his first counsel. Rowzer's brief clearly argues that he was factually innocent of the felon in possession of a firearm charge. As to the money laundering charge, the defendant contends that he did not understand the charge and challenges the legal sufficiency of the superseding information charging the violation.[2] The defendant proffers that the motorcycle that was purchased with cash (and forms the basis of the money laundering charge) lawfully earned at an area casino.[3]

During the November 9, 1999, hearing, Rowzer testified and stated that he is innocent of the crimes to which he pleaded guilty. Acknowledging his admissions of guilt during the change of plea hearing, Rowzer explained that he did not understand the essential elements of the crimes charged at the time he pleaded guilty. Rowzer also testified that he had simply stated what Berger told him to say during the hearing and that his primary desire was to avoid a possible "30 year"[4] sentence.

---

**2.** This challenge is addressed below.

**3.** In his statements to the presentence investigation writer, the defendant stated that the income to purchase the motorcycles came from "legitimate sources of income by doing mechanic work and selling vehicles and

doesn't understand why he 'pled to money laundering.'" *See* Original PSI at page 11.

**4.** The maximum penalty for violating 18 U.S.C. § 922(g) is ten years imprisonment. The maximum penalty for violating 18 U.S.C. § 1957 is ten years imprisonment. Therefore

In *Carr*, 80 F.3d at 420, the Tenth Circuit essentially stated that this factor only requires the defendant seeking to withdraw his plea to assert his innocence. Despite substantial incriminating evidence against him on both charges, this factor weighs in favor of Rowzer.

*(2) Prejudice to the government:*

"Some degree of prejudice to the government is, of course, inevitable from a plea withdrawal." *Carr*, 80 F.3d at 420. Assessing the type, manner and degree of prejudice are necessary to evaluate this factor. *See id.*

 In this case, the government contends that it will be prejudiced if the defendant is permitted to withdraw his guilty pleas. The government indicates that the ten witnesses it needed to call to prove the crimes charged have already been called off, having been told the defendant entered a guilty plea and that the only matter that remained was the issue of sentencing.

Although the underlying facts of this case are not inordinately complex, given the number of witnesses necessary to prove its case, permitting the defendant to withdraw his pleas will cause prejudice to the government. This factor weighs against Rowzer.

*(3) Delay in filing defendant's motion:*

 "The amount of time which has passed between the plea and the motion must also be taken into account" in determining whether the defendant has demonstrated a fair and just reason for withdrawing his plea. Fed.R.Crim.P. 32, Advisory Committee Notes, 1983 Amendment.

A swift change of heart is itself strong indication that the plea was entered in haste and confusion ***. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

*Id. (quoting Barker,* 514 F.2d 208). "[E]xtended delays weigh against granting a withdrawal motion because they often result in substantial prejudice to the government and may suggest manipulation by the defendant." *Carr*, 80 F.3d at 420.

[I]f the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerab[le] ... force. The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case.

*Carr*, 80 F.3d at 420 *(quoting United States v. Vidakovich,* 911 F.2d 435, 439–40 (10th Cir.1990), (delay of five months), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1055 (1991)).

### Analysis

 Rowzer entered his guilty pleas on June 15, 1999. Rowzer did not file his motion to withdraw his pleas until August 20, 1999—over eight weeks after the date he entered his pleas. Courts, including this one, *see United States v. Stewart,* 51 F.Supp.2d 1147, 1152 (D.Kan.1999) (delay of six weeks unreasonable), have deemed similar delays unreasonable. *Compare United States v. Burk,* 36 F.3d 1106, 1994 WL 526709 (10th Cir.1994) (Table) (defendant's change of heart after six week delay, prompted by his belated assessment that he would receive a harsher sentence, unreasonable); *United States v. Lamb,* 100 F.3d 957, 1996 WL 662898 (6th Cir.1996) (Table) ("This court has held that a five-week delay [that precedes a defendant's motion to withdraw his plea] was excessive and warranted the denial of a defendant's motion, and we continue to follow this pre-

the maximum period of incarceration that Rowzer could possibly face if the maximum penalty was imposed on both counts and both

sentences were run consecutively is 20 years (10 + 10 = 20).

cedent with our decision today."); *United States v. Spencer,* 836 F.2d 236, 239 (6th Cir.1987) ("We find that the motion [to withdraw the defendant's guilty plea] was not promptly filed. The defendant waited twenty-two days before filing his motion for withdrawal of his guilty plea—only three days before sentencing. The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.") *with Jones,* 168 F.3d at 1219–20 (motion to withdraw guilty plea filed ten days after Rule 11 hearing deemed timely).

The defendant contends that he has not delayed in filing his motion. The defendant contends that immediately after the change of plea hearing, he embarked on a quest to obtain new counsel. Rowzer testified that he contacted four attorneys, but only Mr. Bennet expressed any interest in evaluating his case. However, at the time he contacted Bennet, Bennet was extremely busy representing a defendant in a state murder case and was unable to even visit Rowzer at CCA Leavenworth until three weeks had passed. Additional delay was attributable to raising the money necessary to retain Bennet. The defendant denied that his desire to hire a new attorney coincided with his receipt of the original draft of the PSIR which suggests a total offense level of twenty-nine and a criminal history category of III, resulting in a guideline range for imprisonment of 108 to 120 months.

Although the court agrees that Mr. Bennett, once retained by the defendant, worked diligently and proficiently at filing a motion seeking permission for Rowzer to withdraw his pleas, the same cannot be said for the expediency of the defendant's own decision to withdraw his pleas. The defendant's own conduct belies his claim that he immediately took steps to withdraw his pleas. After the defendant en-

tered his guilty pleas, this case proceeded for over eight weeks toward imposition of sentence. Rather than make his desire to withdraw his pleas known to the court, the defendant instead dedicated his time to preparing a motion requesting permission to be married while incarcerated at CCA. This factor weighs against Rowzer.

*(4) Inconvenience to the court:*

"As with the prejudice [to the government factor], some degree of inconvenience is inevitable." *Carr,* 80 F.3d at 420. If the defendant is permitted to withdraw his plea, rescheduling a three or four day long trial into the court's busy criminal docket will obviously inconvenience the court and cause delays in other pending cases. This factor weighs against Rowzer. *See id.* at 420–21.

*(5) Assistance of counsel:*

As set forth above, Rowzer makes several attacks on the quality of the legal representation provided by Berger. The court will address each area of concern raised by the defendant.

### Legal Standards

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel. In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Court held that the *Strickland* test also applies to challenges to guilty pleas based on ineffective assistance of counsel, as in the instant case. *Id.* at 58, 106 S.Ct. at 370. To prevail under *Strickland,* an appellant must show both (1) that counsel's performance was deficient and (2) that this deficiency prejudiced appellant's defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Gillette v. Tansy,* 17 F.3d 308, 310 (10th Cir.1994). An appellant can establish the first prong of the *Strickland* test by showing that the attorney's conduct did not fall within the wide range of competence demanded of

attorneys in criminal cases. *Gillette,* 17 F.3d at 310. *See Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369. A court's review of the attorney's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (*quoting Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *See Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 370–71.

*Carr,* 80 F.3d at 417. *See United States v. Kramer,* 168 F.3d 1196, 1200–01 (10th Cir. 1999). "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland v. Washington,* 466 U.S. at 697, 104 S.Ct. 2052.

### Defendant's Allegations of Ineffective Assistance of Counsel

At the outset, the court notes that Jerry Berger is an experienced member of the Kansas bar who regularly practices in state and federal court. *See Gillette v. Tansy,* 17 F.3d 308, 311 (10th Cir.1994) (noting relevance of counsel's experience in determining effectiveness of counsel's assistance). It also deserves mention that Berger successfully negotiated a plea agreement with the government that enables the defendant to avoid federal narcotics and additional money laundering charges carrying substantial penalties.

**(1) Berger's alleged failure to file pretrial motions**

 The defendant apparently believes that Berger should have sought dismissal of the firearms charge on a pretrial

motion—arguing that the undisputed facts made it impossible for the government to obtain a conviction on this count. This contention is flawed in two respects. First, as a procedural obstacle, the government is generally not required to agree to the defendant's statement of facts when it responds to a defendant's pretrial motion to dismiss on the basis of factual innocence. *See United States v. Hall,* 20 F.3d 1084, 1088 (10th Cir.1994) ("Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion. *United States v. King,* 581 F.2d 800, 802 (10th Cir.1978). An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. *United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–75, 9 L.Ed.2d 136 (1962). Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency. Notwithstanding these general principles, this circuit has upheld a pretrial dismissal under Rule 12(b) based on the insufficiency of the evidence where the underlying facts were essentially undisputed and the government failed to object to the district court's resort to evidence beyond the four corners of the indictment."); *United States v. Stephan,* 39 F.3d 1193, 1994 WL 596784, *1 (10th Cir.1994) (Table) (where operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case, "a pretrial dismissal is essentially a determination, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."); *Cf. United States v. Walker,* 947 F.2d 1439, (10th Cir.1991). Second, the government's proffer of evidence it would have offered at trial seemingly eviscerates the defendant's claim of factual innocence of the firearms charge:

The majority of the weapons found during execution of this search warrant were found in a gun safe inside the house. Since he was still in custody in

Shawnee County, Rowzer was not present at the time. The other occupants of the house were interviewed by SAC Brandau and SA Christie, however, about ownership of the gun safe. The other adult occupants of the house were the defendant's common-law wife, Melissa Poston, his sister, Amy Deisher, and Amy's husband, Perry Deisher. Each of those other residents of the house stated that the safe belonged to the defendant, and that only the defendant had access to the weapons inside the safe. Non of those other residents had a prior felony conviction or any legal burden which precluded them from possessing the weapons.

At some point the defendant was released from custody in Shawnee County because, on July 20, 1997, Deputy David Duer of the Jackson County Sheriff's Department arrested the defendant on a warrant. During his processing at the Jackson County jail, and in the presence of Deputy Duer, the defendant called his bondsman. In that conversation, which was also made on a recorded telephone line out of the jail, the defendant told the bondsman, " . . . I had a collection of rifles and they took my collection."

During this investigation, three of the rifles recovered from the defendant's gun safe were traced to William Nonnast of Lake Kanapolis, Kansas. On May 5, 1998, an FBI agent contacted Nonnast and interviewed him about the rifles. Nonnast told the agent he had sold the three rifles for approximately $1,700 in February of 1997 to an individual who approached him outside a pawn shop in Topeka. Nonnast thought this individual identified himself as "John." Nonnast was shown a photo line-up in an attempt to identify the individual to whom he sold the rifles. Nonnast could

not positively identify the buyer, but said that the person in Photograph # 6 resembled the buyer most closely. Photograph # 6 was [not] [5] a photograph of the defendant.

On August 5, 1998, Amy and Perry Deisher testified before the grand jury about their knowledge of the case. Amy stated that the gun safe did in fact belong to the defendant, and that the defendant was the only resident of the house who had a key to the safe. More significantly, she stated that she had seen the defendant in possession of several of the weapons from the gun safe (the rifles purchased from Nonnast) when she, Perry and the defendant had been target shooting. Perry initially denied having been target shooting with the defendant. When confronted with his wife's statement, however, Perry said, "I don't remember. If she says we did . . . I'm not sure."

Government's brief in response to defendant's motion to withdraw pleas at 3–4.

Having reviewed the government's proffer of evidence regarding the money laundering count,[6] there also appears to be a mass of reliable evidence that Rowzer had been engaged in the trafficking of methamphetamine, that he made substantial profits from that illicit enterprise, and that he purchased many items, including the motorcycle identified in the superseding information with the proceeds of his crimes.

(2) **Berger's alleged failure to explain the essential elements of the crime of unlawful possession of a firearm/failure to explore the defenses available to the charge**

**Evaluating Counsel's Competence in Recommending Guilty Plea**

The Tenth Circuit has

5. During oral argument, the government corrected a misstatement in its brief which erroneously indicated that the defendant was the person pictured in photograph # 6.

6. The court simply notes that the original PSIR recounts substantial evidence collected

from a number of sources which indicate that Rowzer was a large scale distributor of methamphetamine. The volume of methamphetamine described in the PSIR would expose Rowzer to substantially larger penalties than the penalty for money laundering.

held that a plea may be involuntary if the attorney " 'materially misinforms the defendant of the consequences of the plea,' " *United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir.1990), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991) (*quoting Laycock v. State of New Mexico*, 880 F.2d 1184, 1186 (10th Cir.1989)).... In order to demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Laycock v. State of New Mexico*, 880 F.2d 1184, 1187 (10th Cir.1989).

*Carr*, 80 F.3d at 418.

The court finds Berger's account of his pre-plea discussions more credible than Rowzer's self-serving and improbable version. Although he could not remember exact dates of each and every conversation, Berger was confident that prior to the defendant's pleas he had explained the essential elements of the crimes charged and why the weight of the evidence would more than likely be sufficient to sustain a conviction for felon in possession of a firearm. Berger also explained the advantages of entering a plea to the money laundering count, including the government's agreement to not bring any further charges against the defendant arising from the information in the government's possession at the time of the plea. Contrary to the defendant's suggestion, he undoubtedly had more than "a couple of minutes" to evaluate and consider his options. In short, the court is satisfied that Berger explained the pros and cons of going to trial as compared to the advantages and disadvantages of accepting the terms of the plea agreement. The court finds no constitutional deficiency in Berger's performance in this case.

**(3) Convincing Rowzer to plead to the money laundering count.**

*Defective Superseding information*

As indicated above, in a supplemental pleading, the defendant argued that the superseding information charging him with money laundering is defective as it omits an essential element of the crime charged. The government correctly responds that the defendant was charged with violating 18 U.S.C. § 1957, not 18 U.S.C. § 1956. Consequently, the cases cited by the defendant regarding the sufficiency of the information or indictment charging a violation of § 1956 are inapplicable. *See United States v. Allen*, 129 F.3d 1159, 1165–66 (10th Cir.1997) (distinguishing elements of § 1957 from § 1956);[7] *United States v. Van Brocklin*, 115 F.3d 587, 599 (8th Cir.

7. In *Allen*, the Tenth Circuit stated:

Section 1956, the companion statute to section 1957, prohibits money laundering as that activity is commonly understood. Section 1956 punishes conducting a financial transaction with the proceeds of specified unlawful activity knowing that the transaction is designed to conceal or disguise the nature, location, source, ownership or control of the proceeds, or intending that the transaction be so designed. *See* 18 U.S.C. § 1956(a)(1)(B)(i), (a)(2)(B)(i), (a)(3)(B). Section 1957, on the other hand, prohibits engaging in monetary transactions in property from specified unlawful activity, and contains no requirement that the transaction be designed to conceal anything. A defendant must know only that she is engaging in a transaction and that the subject of the transaction is criminally derived property. *See* 18 U.S.C. § 1957(a).

Thus, Section 1957 differs from section 1956 in two critical respects: It requires that the property have a value greater than $10,000, but it does not require that the defendant know of a design to conceal aspects of the transaction or that anyone have such a design. Due to the omission of a "design to conceal" element, section 1957 prohibits a wider range of activity than money "laundering," as traditionally understood. *United States v. Wynn*, 61 F.3d 921, 926–27 (D.C.Cir. 1995).

The description of [a section 1957 violation] does not speak to the attempt to cleanse dirty money by putting it in a clean form and so disguising it. This statute applies to the most open, above-board transaction. The intent to commit a crime or the design of concealing criminal fruits is eliminated. *United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir.1997) (citation omitted).

1997) ("The elements of a § 1956 violation are: (1) the defendant conducted a financial transaction which involved the proceeds of unlawful activity; (2) defendant knew that the property involved in the transaction was the proceeds of specified unlawful activity; and (3) that defendant intended to promote the carrying on of specified unlawful activity. *United States v. Williams*, 87 F.3d 249, 254–55 (8th Cir. 1996). A conviction under § 1957 requires a showing that: (1) defendant knowingly engaged in a monetary transaction; (2) the defendant knew that the property involved derived from specified unlawful activity; and (3) the property is of a value greater than $10,000." *See United States v. Hare*, 49 F.3d 447, 451 (8th Cir.1995)), *cert. denied* 523 U.S. 1122, 118 S.Ct. 1804, 140 L.Ed.2d 944 (1998). As the defendant conceded during oral argument, the superseding information charging Rowzer with violating § 1957 is not defective.

*Pressure by defense counsel to plead*

■ During the guilty plea colloquy, the defendant specifically stated that his plea was not the product of pressure from anyone else and that he was satisfied with services of his attorney. That Berger told the defendant that he should take the deal—even in an emphatic way—would not render Rowzer's guilty plea involuntary. *See Carr*, 80 F.3d at 417 (defense counsel who told defendant who initially did not want to accept the plea agreement that he was "stupid" and "a fucking idiot" did not vitiate the voluntariness of the defendant's plea; decision to enter plea was still defendant's to make). Given the weight of the evidence against Rowzer regarding his unlawful possession of a firearm, illicit drug trafficking and money laundering, it is "perfectly appropriate for [defense counsel] to inform his client about the great likelihood of conviction." *Carr*, 80 F.3d at 418. Moreover, if Rowzer "was being coerced into pleading guilty, he should have so stated to the district court." *Jones*, 168 F.3d at 1220. "After freely and voluntarily pleading guilty, he cannot now complain that he did so under duress." *Id.*

Prior to accepting the defendant's plea, the court conducted a lengthy and thorough colloquy with the defendant and his counsel. Despite the defendant's testimony that he was simply following his attorney's instructions, the court is not satisfied that the defendant has demonstrated that he would not have pleaded guilty and would have insisted on going to trial. The deal negotiated by the defendant's counsel was a good one for the defendant. The defendant's belated post-plea remorse is insufficient to set aside his pleas.

*Miscalculation of the Defendant's Sentencing Range*

■ The court is satisfied that Berger explained all of the salient aspects of the plea agreement to the defendant prior to the change of plea hearing, including the maximum potential sentence and total range of sentence he likely faced. Based upon Berger's understanding of the relevant facts, Berger told Rowzer that if he plead guilty to felon in possession and money laundering that those crimes would be grouped and that his sentencing range would be approximately around 51 months. As indicated above, the original PSI suggests a sentencing range of 108 to 120 months, or over twice the range Berger predicted.

Berger's original sentencing estimate is a reasonable approximation of the defendant's sentencing range if he is not assessed enhancements for specific offense characteristics and if he earned the two points for acceptance of responsibility. Those enhancements, however, add substantial time to the defendant's total offense level and concomitantly to his sentencing guideline range. In any event, Berger's estimate, albeit inaccurate if the court were to accept the PSIR as now written, does not render Rowzer's plea involuntary. "Although constitutionally deficient performance by defense counsel may render a plea involuntary, '[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance.'" *United States v.*

*Williams,* 118 F.3d 717, 718 (10th Cir.) (*quoting United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir.1993)), *cert. denied,* 522 U.S. 1033, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997); *United States v. Williams,* 948 F.Supp. 956, 963 (D.Kan.1996) ("An attorney's failure to estimate with certainty the length of the defendant's sentence does not rise to the level of ineffective assistance of counsel."), *aff'd,* 118 F.3d 717 (10th Cir.), *cert. denied,* 522 U.S. 1033, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997).

In sum, Berger's performance was not constitutionally deficient in any way. This factor weighs against Rowzer.

### (6) Voluntariness of the plea:

▇▇▇ "One fair and just reason justifying withdrawal of a guilty plea is that it was not made voluntarily." *United States v. Leung,* 783 F.Supp. 357, 359 (N.D.Ill. 1991) (*citing U.S. v. Ellison,* 835 F.2d 687, 692–93 (7th Cir.1987), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987)). "The existence of a fundamental misunderstanding of the requirements and operation of the plea agreement is a fair and just reason for permitting [a] defendant to withdraw his plea." *United States v. Ailsworth,* 927 F.Supp. 1438, 1451 (D.Kan.1996). *See United States v. Pressley,* 602 F.2d 709, 711 (5th Cir.1979) ("If [the defendant] was mistaken as to the terms of the plea bargain, his original plea must be deemed less than a fully knowledgeable waiver of his rights.").

▇▇▇ Based upon the colloquy between the court and the defendant prior to the court's acceptance of his guilty pleas, it is very difficult for the court to imagine that Rowzer's pleas were anything but the product of a voluntary, knowing and intelligent waiver of his constitutional rights. *See Williams,* 118 F.3d at 718 ("Moreover, as set forth in the district court's order denying § 2255 relief, Mr. Williams' contention that he did not understand the possible penalties associated with his plea is belied by his discourse with the court at his plea hearing and the plea agreement itself."). The defendant's post-plea re-morse does not render his plea involuntary. *See Jones,* 168 F.3d at 1220 n. 1 ("The notion that a defendant may withdraw his guilty plea because he later feels that he made a poor decision has been flatly rejected by numerous courts."). This factor weighs against Rowzer.

### (7) Waste of judicial resources:

"[S]ome waste of judicial resources from a plea withdrawal is inevitable." *Carr,* 80 F.3d at 421. Although the waste attributable to permitting Rowzer to withdraw his plea would not be colossal, this factor nevertheless weighs against Rowzer. As mentioned above, the original presentence report has already been prepared and disclosed to the parties. This factor weighs against Rowzer.

### (8) Likelihood of Conviction

Viewing the direct and circumstantial evidence against the defendant, including the incriminatory statements of the defendant's own sister and the defendant's own tape-recorded admissions, it seems extremely unlikely that the defendant would not be found guilty of both felon in possession of a firearm, money laundering and narcotics trafficking (had those charges been filed). This factor weighs against Rowzer.

### Summary

In sum, having considered the evidence presented, and having considered the credible evidence in light of the factors established by the Tenth Circuit for determining whether the defendant has demonstrated a fair and just reason for withdrawing his plea, the court concludes that Rowzer has failed to carry his burden. The court finds that Rowzer's guilty pleas were the product of his knowing, intelligent and voluntary waiver of his right to trial. In making this finding, the court concludes that Berger's performance was not constitutionally deficient.

**Time for Filing Objections to the PSIR**

At the time the court accepted the defendant's change of plea, the court set a time for filing objections to the original PSI, the amended PSI and the day of sentencing. Because the defendant sought to withdraw his pleas, the court entered an order continuing the sentencing date. In light of its decision to deny the defendant's motion to withdraw his pleas, the court sets a new sentencing date of January 21, 2000, at 2:00 p.m. The court also sets the following dates relevant to sentencing.

Written Objections by Either Party to Original PSI due to the Probation Department: December 9, 1999;

Final PSI provided to the parties and to the court: January 11, 2000;

Memorandum Pertaining to Sentencing Factors and Facts which have not been resolved in the Final Presentence Report (Filed with the Clerk's Office/Copies to the Probation Department, Opposing Party and the Court's Chambers): January 13, 2000.

IT IS THEREFORE ORDERED that Rowzer's "Motion to Withdraw and Set Aside Pleas of Guilty Previously Entered Herein" (Dk.48) is denied.

IT IS FURTHER ORDERED that sentencing in this case is set for January 21, 2000, at 2:00 p.m. at the U.S. Courthouse, 444 S.E. Quincy, Room 404, Topeka, Kansas.

IT IS FURTHER ORDERED that the date for filing objections to the PSI, the date for distribution of the final PSI, and the date to file a sentencing memorandum are modified as set forth in the body of this opinion.